**SERENA L. NERVEZ**, State Bar No. 227529
snervez@veatchfirm.com
**MARK. M. RUDY**, State Bar No. 126254
mrudy@veatchfirm.com
**VEATCH CARLSON, LLP**
1055 Wilshire Blvd., 11th Floor
Los Angeles, CA 90017-2444
Tel: (213) 381-2861
Fax: (213) 383-6370

Attorneys for Defendants,
**SIERRA MENTAL WELLNESS GROUP,
JOSH SIMPSON, and SHELLI WATSON**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA COOPER, Individually, and on the behalf of the Estate of Decedent, ELINA QUINN BRANCO,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN LUIS OBISPO, a government entity, form unknown; SIERRA MENTAL WELLNESS GROUP, a California non-profit corporation; JASON HOOSON, individually, SAVANNAH WILLIAMS, individually; JOSH SIMPSON, individually; BONNIE SAYERS, individually; JULIA TIDIK, individually; BETHANY AURIOLES, individually; JANET BROWN, individually; SHELLE WATSON, individually; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO: 2:24-cv-08187-SVX (AJRx)**<br>*District Judge: Stephen V. Wilson, Court Room 10A*<br>*Magistrate Judge: A. Joel Richlin*<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:  December 16, 2024<br>TIME:  1:30 p.m.<br>CTRM:  10<br><br>Complaint Filed: September 25, 2024<br>Trial Date: None Set |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on **December 16, 2024**, at **1:30 p.m.** in **Courtroom 10** of the above-entitled Court located at 350 W. 1st Street, 10th Floor, Los Angeles, California 90012, or as soon thereafter as the matter may be heard, Defendants

1

SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, and SHELLI WATSON will move the court for an order dismissing the following, pursuant to Federal Rules of Civil Procedure, 12(b)(6) on the grounds that the complaint does not state a plausible claim for punitive damages against each moving Defendant:

    (1)    Plaintiff's claim for punitive damages against Defendant Josh Simpson;

    (2)    Plaintiff's claim for punitive damages against Defendant Shelle Watson;

    (3)    Plaintiff's claim for punitive damages against Defendant Sierra Mental Wellness Group.

This Motion is made following a meet and confer conference, pursuant to Local Rule 7-3, which took place on November 13, 2024, via a telephone call between defense counsel, Sonja M. Dahl, and Plaintiff's counsel Jeffrey Mikel, that lasted approximately 30 minutes, as well as via meet and confer email which set forth the grounds and authorities upon which Defendants will be relying in this motion sent on November 11, 2024. However, after a thorough discussion of the issues set forth herein, the parties were unable to reach an agreement regarding disposition of the matters at issue.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities in support; the Court's files in this action; the oral argument of counsel if ordered by the court; and upon such other and further evidence as the court might deem proper.

Dated: November 14, 2024

VEATCH CARLSON, LLP

_____
SERENA L. NERVEZ
MARK M. RUDY
Attorneys for Defendants,
**SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, and SHELLI WATSON**

*Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

**NOTICE OF MOTION AND MOTION OF DEFS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMO. OF POINTS AND AUTHORITIES CASE NO: 2:24-cv-08187-SVX (AJRx)**



# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................... 3

TABLE OF AUTHORITIES .................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 6

I. INTRODUCTION ......................................................................................... 6

II. ALLEGATIONS PERTAINING TO MOVING DEFENDANTS. ............. 6

    A. Allegations pertaining to Sierra Mental Wellness Group. ............... 6

    B. Allegations pertaining to Josh Simpson. ........................................... 7

    C. Allegations pertaining to Shelle Watson. .......................................... 8

III. LEGAL STANDARD ON A MOTION TO DISMISS A CLAIM FOR PUNITIVE DAMAGES ............................................................................. 10

    A. The Federal Standard of Decision .................................................. 10

    B. The substantive elements of a punitive damages claim under California law. ................................................................................... 12

IV. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF FOR PUNITIVE DAMAGES AGAINST JOSH SIMPSON ............... 15

V. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF FOR PUNITIVE DAMAGES AGAINST SHELLE WATSON ......... 16

VI. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF FOR PUNITIVE DAMAGES AGAINST SIERRA MENTAL WELLNESS GROUP ................................................................................ 16

VII. CONCLUSION ........................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................... 18

3

**NOTICE OF MOTION AND MOTION OF DEFS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMO. OF POINTS AND AUTHORITIES CASE NO: 2:24-cv-08187-SVX (AJRx)**

# TABLE OF AUTHORITIES

**CASES**

*American Airlines, Inc. v. Sheppard, Mullin, etc.* (2002) 96 Cal.App.4th 1017 .................................. 14

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 ........................................................................................ 10, 11

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* (1983) 459 U.S. 519 . 10

*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544 ....................................................................... 10, 11

*Caltex Plastics, Inc. v. Lockheed Martin Corp.* (9th Cir. 2016) 824 F.3d 1156 ................................ 10

*Clark v. State Farm Mut. Auto. Ins. Co.* (C.D. Cal. 2005) 231 F.R.D. 405 ........................................ 11

*College Hospital* ............................................................................................................................. 13

*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704 ........................................................ 12

*Cruz v. HomeBase* (2000) 83 Cal.App.4th 160 ............................................................................... 14

*Everett H. v. Dry Creek Joint Elementary School Dist.* (E.D. Cal. 2014) 5 F.Supp.3d 1167 ............. 11

*Grieves v. Superior Court* (1984) 157 Cal.App.3d 159 ................................................................... 16

*Hishon v. King & Spaulding* (1984) 467 U.S. 69 ............................................................................. 10

*Kelley v. Corrections Corp. of America* (E.D. Cal. 2010) 750 F.Supp.2d 1132 .......................... 11, 17

*Lackner v. North* (2006) 135 Cal.App.4th 1188 ............................................................................. 13

*Los Angeles Unif. Sch. Dist. v. S&W Atlas Iron & Metal Co., Inc.* (C.D. Cal. 2020) 506 F.Supp.3d 1018 ........................................................................................................................................ 10, 11

*Morgan v. Woessner* (9th Cir. 1993) 997 F.2d 1244 ...................................................................... 13

*Moss v. U.S. Secret Service* (9th Cir. 2009) 572 F.3d 962 ......................................................... 12, 17

*Rees v. PNC Bank, N.A.* (N.D. Cal. 2015) 308 F.R.D. 266 ................................................................ 11

*Scalia v. County of Kern* (E.D. Cal. 2018) 308 F.Supp.3d 1064 ...................................................... 13

*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563 ............................................................................... 15

*Whittlestone, Inc. v. Handi-Craft Co.* (9th Cir. 2010) 618 F.3d 970 ............................................... 11

*Yeager v. Corrections Corp. of America* (E.D. Cal. 2013) 944 F.Supp.2d 913 ................................. 14

**STATUTES**

*Cal. Civ. Code* § 3294(c)(1) & (2) .................................................................................................... 13

| | | |
|---|---|---|
| 1 | Civil Code section 3294(b). | 12, 14, 17 |
| 2 | **RULES** | |
| 3 | Federal Rule 8(a)(2) | 11 |
| 4 | Federal Rule of Civil Procedure 12(b)(6) | 10, 11 |
| 5 | Rule 12(b)(6), | 10 |
| 6 | Rule 12(f). | 11 |


VEATCH CARLSON, LLP
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
1055 WILSHIRE BOULEVARD, 11TH FLOOR
LOS ANGELES, CALIFORNIA 90017

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this action, Plaintiff Linda Cooper alleges that the defendants violated the civil rights of her and her daughter Elina Branco when Ms. Branco was admitted to the Crisis Stabilization Unit ("CSU") of the County of San Luis Obispo under a psychiatric "5150 hold," under circumstances in which the CSU did not have staff with the necessary expertise or training to detect or care for Ms. Blanco's "comorbid *medical* condition," resulting in Ms. Blanco's death. The complaint also alleges negligent care and treatment, as well as Dependent Adult Abuse pursuant to California law.

Defendants Josh Simpson, Shelle Watson and Sierra Mental Wellness Group now move to dismiss the punitive damages allegations against them as being insufficient under California and federal law.

## II.    ALLEGATIONS PERTAINING TO MOVING DEFENDANTS.

### A. Allegations pertaining to Sierra Mental Wellness Group.

Sierra Mental Wellness Group ("Sierra") is a nonprofit corporation which provides *crisis mental health* services under contract with various public entities, including San Luis Obispo County. (Doc 1, Complaint, para. 14, 71) The CSU has a closed-circuit video surveillance system which recorded activity where Ms. Branco was housed. (Doc 1, Complaint, para. 71) Once Mr. Hooson placed Ms. Blanco under the 5150 hold, Ms. Branco was under the "care and custody of the County acting by and through Sierra." (Doc 1, Complaint, para. 73-74)

Several years prior to the events in this case, a San Luis Obispo County Grand Jury made findings that the CSU was not equipped to provide care to "clients with underlying medical conditions," and the CSU remained so at the time of Ms. Blanco's admission, lacking "adequate medical staffing in the form of nurses or physicians to treat clients with urgent medical conditions." (Doc 1, Complaint, para. 75) The Grand Jury found several years prior to Ms. Blanco's admission that staff covered up cameras in

order to hide their neglect of patients. (Doc 1, Complaint, para. 76)

At the time of Ms. Blanco's admission to the CSU, Sierra's contract with the County required that a "registered nurse, a psychiatric technician or psychiatric services would be physically present" on the premises. (Doc 1, Complaint, para. 78) The allegations of the Complaint establish that at all times during Ms. Blanco's stay at the CSU, a psychiatric technician was on the premises.

Nowhere in plaintiff's Complaint is it stated that Sierra was charged with a legal duty to diagnose and treat a patient's underlying "medical" condition during a *psychiatric* hold. In fact, the complaint alleges that Ms. Blanco was "deemed medically stabled [sic] for discharge" by the hospital prior to Mr. Hooson's placement of the 5150 hold. (Doc 1, Complaint, para. 45)

### B. Allegations pertaining to Josh Simpson.

Mr. Simpson is alleged to be the Regional Manager of Program Operations, and "in charge" of supervising health crisis programs, ensuring compliance with state laws, ensuring that the Crisis Stabilization Unit was "medically capable" of addressing the "medical needs" of clients, ensuring that Sierra had working policies in place, and ensuring adequate training. It is further alleged that Mr. Simpson failed to ensure that the CSU "was always adequately staffed with registered nurses and supervisor", and that he "failed to ensure the proper level of training was provided to CSU staff." (Doc 1, Complaint, para's 84, 105)

Plaintiff further alleges that on the date of Ms. Blanco's admission to Sierra, Mr. Simpson was "aware" of particular details related to Ms. Branco's "previous hospitalization for an earlier drug overdose," and prior to her admission to the SCU she had been declared medically stable "but required close medical supervision and continuous monitoring for any sign of deterioration"; that he was aware of Ms. Branco's underlying "co-morbid medical condition" and her "high risk of self harm"; that the CSU facility was not staffed with personnel qualified by background and training to care for

Ms. Branco's "comorbid" medical condition; and that he was aware of CSU's prior history of personnel "routinely" failing to monitor clients. (Doc 1, Complaint, para. 101) Plaintiff further alleges that Mr. Simpson personally made undescribed "affirmative decisions" that put Ms. Branco into a worse position than she was before being admitted to the CSU. (Doc 1, Complaint, para. 105)

The allegations related to Ms. Branco's admission are made despite the fact that Mr. Simpson is not alleged to have been involved in any of the direct care decisions, nor is he alleged to have even been on the premises at the time Ms. Branco was admitted. Plaintiff further alleges that Mr. Simpson "assumed substantial [unspecified] caretaking and custodial relationship with" Ms. Branco, and had "ongoing [unspecified] responsibilities to ensure not to endanger her health and safety." (Doc 1, Complaint, para's 117, 118, 119)

### C. Allegations pertaining to Shelle Watson.

Plaintiff alleges that Ms. Watson is a licensed psychiatric technician. (Doc 1, Complaint, para. 36) The complaint alleges that a psychiatric technician is "not trained nor allowed to assess for medical conditions nor to provide vital medical care to patients suffering from an acute medical condition." A psychiatric technician may not "perform comprehensive medical assessments to uncover an underlying medical condition that may prove fatal is not immediately addressed." Ms. Watson's "scope of responsibility for client care [was] limited to monitoring a patient's behavior or mental health." (Doc 1, Complaint, para's 78, 79)

At approximately 1 p.m. on May 15, 2024, Ms. Cooper called the CSU and informed Ms. Watson that her daughter had overdosed and was currently in the emergency room and needed a safe place for her to be until being admitted into an addiction treatment facility. Ms. Watson advised that she could send a mobile crisis unit evaluator to evaluate her daughter; the evaluator would be able to place a hold on her daughter and refer her to the CSU for overnight stay. The CSU would facilitate her

8
**NOTICE OF MOTION AND MOTION OF DEFS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMO. OF POINTS AND AUTHORITIES CASE NO: 2:24-cv-08187-SVX (AJRx)**

1    transfer to the addiction treatment facility. (Doc 1, Complaint, para. 36)

2         Mr. Hooson responded to the emergency room, placed a hold on Ms. Branco, and drove her to the CSU. (Doc 1, Complaint, para. 41) Upon arrival at the CSU, Mr. Hooson handed a "crisis assessment report" and a "CSU Acceptance Screening Tool" form to Ms. Watson and Ms. Aurioles. (Doc 1, Complaint, para. 48, 49) Ms. Watson is alleged to have made the "intentional decision to medically accept" Ms. Branco despite knowing "of her underlying medical condition and the high risk that she posed," and that the CSU "was not staffed with personnel qualified with medical background and training to attend and care for [Ms.] Branco's co-morbid medical condition." The complaint further alleges that Ms. Watson was aware of the "history of personnel neglect, including staff routinely failing to monitor clients placing them at grave risk to their health and safety," and nonetheless accepted Ms. Blanco into the facility "knowing full well that neither they nor the CSU was qualified to care for and address [Ms.] Branco's medical condition." (Doc 1, Complaint, para.'s 84, 98, 101, 103)

     Plaintiff further alleges that the decision of Ms. Watson to admit Ms. Branco, as the "on-site day supervisor," who performed a "separate assessment and ensuing admission" of Ms. Branco, led her subordinates to believe they were capable of medically treating and caring for Ms. Branco. It was foreseeable that the failure to reject Ms. Branco for admission would place her at an unreasonable risk to her safety and health. Ms. Watson "disregarded" a "known or obvious consequence" that Ms. Branco's admission "directly endangered Ms. Branco's health," and "was so closely related to the deprivation of Ms. Branco's rights as to be the "moving force that caused the constitutional violation, injuries and death." (Doc 1, Complaint, para.'s 110-113)

     Significantly, *all* of the decision-making which plaintiff alleges warrants punitive damages against Ms. Watson are *all also specifically alleged to have been beyond Ms. Watson's legal scope of practice.* According to the allegations of Plaintiff's own complaint, to reject Ms. Blanco's admission based upon Ms. Watson's independent

9
**NOTICE OF MOTION AND MOTION OF DEFS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMO. OF POINTS AND AUTHORITIES CASE NO: 2:24-cv-08187-SVX (AJRx)**

assessment of Ms. Blanco's "underlying comorbid medical condition," *and* the CSU staff's ability to care for that condition, Ms. Watson would have had to exceed her own scope of training and legal ability to provide care as a psychiatric technician. To obtain punitive damages against Ms. Watson, the plaintiff would have to establish that she had a legal duty to exceed her scope of practice, i.e., a duty to break the law.

### III.    LEGAL STANDARD ON A MOTION TO DISMISS A CLAIM FOR PUNITIVE DAMAGES.

#### A. The Federal Standard of Decision

A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that a claim pleaded against him or her is not supported by sufficient facts to support the "cognizable legal theory" underlying the claim. *Caltex Plastics, Inc. v. Lockheed Martin Corp.* (9th Cir. 2016) 824 F.3d 1156, 1159; *Los Angeles Unif. Sch. Dist. v. S&W Atlas Iron & Metal Co., Inc.* (C.D. Cal. 2020) 506 F.Supp.3d 1018, 1028. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 570. A claim has "facial plausibility" when the plaintiff has plead facts which allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678.

In deciding a motion under Rule 12(b)(6), the court accepts all well-pleaded facts as true, and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spaulding* (1984) 467 U.S. 69, 73. But a "legal conclusion couched as a factual allegation" need not be accepted. *Iqbal, supra,* 556 U.S. at 678; quoting *Twombly, supra,* 550 U.S. at 555. Nor is it appropriate to assume that the plaintiff "can prove facts which [are] not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* (1983) 459 U.S. 519, 526.

The determination whether the facts alleged plausibly state a claim is "context-

specific, requiring the Court to draw on its experience and common sense." When "the well-pleaded facts do not permit the court to infer more than the mere *possibility*" of the particular misconduct alleged, the plausibility standard is not met. *Los Angeles School Dist., supra,* 506 F.Supp.3d at 10028-1029, quoting *Iqbal, supra,* 556 U.S. at 679 (emphasis added). If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly, supra,* 550 U.S. at 570.

A motion addressing the sufficiency of allegations supporting punitive damages is appropriately brought pursuant to Rule 12(b)(6), rather than as a motion to strike pursuant to Federal Rule 12(f). *Rees v. PNC Bank, N.A.* (N.D. Cal. 2015) 308 F.R.D. 266, 272-273, citing *Whittlestone, Inc. v. Handi-Craft Co.* (9th Cir. 2010) 618 F.3d 970, 974.

While some courts have held that a plaintiff in federal court may assert a claim for punitive damages "rel[ying] entirely on unsupported and conclusory averments of malice or fraudulent intent," *Clark v. State Farm Mut. Auto. Ins. Co.* (C.D. Cal. 2005) 231 F.R.D. 405, 406, others have observed that this rule contradicts the Supreme Court's recent declarations of law regarding the correct pleading standard. *Everett H. v. Dry Creek Joint Elementary School Dist.* (E.D. Cal. 2014) 5 F.Supp.3d 1167, 1176. *Everett* observed that Federal Rule 8(a)(2) "requires a *showing,* rather than a blanket assertion, of entitlement to relief." *Ibid.,* quoting *Twombly, supra,* 550 U.S. at 556, n. 3 (emphasis added). "Thus, '[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.' *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, *supra,* at § 1202)." *Everett, supra,* 5 F.Supp.3d at 1176; see also, *Kelley v. Corrections Corp. of America* (E.D. Cal. 2010) 750 F.Supp.2d 1132, 1146–1147 (discarding the rule allowing conclusory pleading of punitive damages and applying "the standards set forth in *Twombly* and *Iqbal*" to motion to dismiss punitive

damages claim).

The Ninth Circuit has acknowledged "the allegations must be *factual* in nature." *Moss v. U.S. Secret Service* (9th Cir. 2009) 572 F.3d 962, 970 (emphasis added). "When *there are well-pleaded factual* allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.,* at 970 (emphasis added). Thus, whether plaintiff has stated a plausible claim for relief for punitive damages here will depend upon whether the *facts* plead regarding each Defendant's conduct plausibly meet the standard of conduct set forth for recovery of punitive damages under California substantive law.

### B. The substantive elements of a punitive damages claim under California law.

While compensatory damages are "designed to make the plaintiff 'whole,'" punitive damages are a "windfall" form of recovery. *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 712. California law pertaining to punitive damages, after remaining stable for "more than a century," underwent a number of *substantive* changes by which "the [California] Legislature has made it more difficult for plaintiffs to plead and prove such claims." *Ibid*. In 1980, "the concepts of 'oppression,' fraud,' and 'malice' were given *specific definitions*." And the Legislature "modified the substantive elements" of a punitive damages award against an employer "based upon *acts* of an employee," in Civil Code section 3294(b). *Id.,* at 712-713 (emphasis added). Later, in 1987, the burden of proof at trial was increased to "clear and convincing evidence," rather than a mere preponderance. *Id.,* at 713.

Thus, under California law, each substantive element of a punitive damages claim is "strictly defined." *Id.,* at, 721. Since the plaintiff does not plead "fraud" as a basis for punitive damages against moving Defendants, the possible operative elements of punitive damages would be "malice" and "oppression."

(1) "Malice" means *conduct* which is intended by the

>defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>
>(2) "Oppression" means despicable *conduct* that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

*Cal. Civ. Code* § 3294(c)(1) & (2). Plaintiff does not allege that Defendants "intended to cause injury," so that element of "malice" is not at issue.

Both "malice" and "oppression" include the substantive element of "despicable conduct." The Legislature's addition of the requirement for "despicable conduct" was intended as a *substantive limitation* on punitive damage awards." *College Hospital, supra,* 8 Cal.4th at 735 (emphasis added). The statutory term "despicable" requires conduct that is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1210.

With regard to civil rights claims brought under 42 U.S.C. Section 1983, punitive damages may be awarded "when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Morgan v. Woessner* (9th Cir. 1993) 997 F.2d 1244, 1255; *Scalia v. County of Kern* (E.D. Cal. 2018) 308 F.Supp.3d 1064, 1089.

>Punitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy. The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages. . . . Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the Plaintiff's rights, a level which decent citizens should not have to tolerate.

*American Airlines, Inc. v. Sheppard, Mullin, etc.* (2002) 96 Cal.App.4th 1017, 1050-1051.

As to Sierra, a corporation, California Civil Code section 3294(b) provides the legal requirements to award punitive damages against an "employer."

> Corporations are legal entities which do not have minds capable of recklessness, wickedness, or intent to injure or deceive. An award of punitive damages against a corporation therefore must rest on the *malice of the corporation's employees*. But the law does not impute every employee's malice to the corporation. Instead, the punitive damages statute requires proof of malice *among corporate leaders:* the "officers, directors and managing agents." This is the group whose intentions guide corporate conduct. By so confining liability, the statute avoids punishing the corporation for malice of low-level employees which does not reflect the corporate "state of mind" or the intentions of corporate leaders. This assures that punishment is imposed only if the *corporation* can fairly be viewed as guilty of the evil intent sought to be punished.

*Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 167 (emphasis added, internal citations and quotations omitted).

There is no *respondeat superior* liability for punitive damages in California. To plead a punitive damages claim against an employer, facts must be plead that an "officer, director or managing agent" either acted with malice, oppression or fraud, or authorized or ratified the actions of an employee who acted in that manner. *Yeager v. Corrections Corp. of America* (E.D. Cal. 2013) 944 F.Supp.2d 913, 931. California Civil Code section 3294(b) states:

> An *employer* shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or *authorized or ratified the wrongful conduct* for which the damages are awarded or was *personally guilty* of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an *officer, director, or managing agent of the corporation*.

*Cal. Civ. Code* 3294(b) (emphasis added). Section 3294(b) was added to the punitive damages statute in 1980 to "avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondent superior liability from corporate liability for punitive damages." *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572. "[T]he Legislature intended that principal liability for punitive damages not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately *determine* corporate policy." *Id.*, at 577.

### IV. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF FOR PUNITIVE DAMAGES AGAINST JOSH SIMPSON.

The allegations pertaining to Mr. Simpson's wrongdoing center on his failure to assure that the facilities were properly staffed and trained. They also assert that he (as an administrator, not a health care provider), despite the fact that he was not alleged to have been on the premises at the time of the events in question, "knew" that the facility was not equipped to handle a client with *undetected* "underlying medical conditions,"

and therefore Ms. Blanco should not have been admitted, because the psychiatric crisis unit was ill equipped to diagnose and treat "underlying medical conditions that could prove fatal" if not addressed. It is not "plausible" to suggest that an administrator should have overridden the 5150 hold placed by Mr. Hooson and interfered with the decision to admit Ms. Blanco due to her "underlying medical condition."

The *contract* under which Sierra operated the CSU and by which it was bound provided that the facility must be staffed at all times by at least a licensed psychiatric technician, and the complaint alleges that that condition was met. The complaint alleges that diagnosing and treating "underlying medical conditions" was *beyond the scope of practice* of a psychiatric technician, and therefore Mr. Simpson could not "plausibly" be said to have deliberately disregarded the risk of failing to train psychiatric technicians to do so, and to enact policies that would allow them to do so. Punitive damages are not recoverable for mere negligence or even gross negligence. *Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 167.

## V. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF FOR PUNITIVE DAMAGES AGAINST SHELLE WATSON.

The allegations against Ms. Watson center around her "decision" to admit Ms. Blanco to the CSU. As stated above, the complaint itself contains the allegations that make the punitive damages claim against Ms. Watson "implausible," as the "decision" which plaintiff urges Ms. Watson should have made, to reject Ms. Blanco as a client due to her "underlying medical condition,", was *beyond her scope of practice*.

## VI. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF FOR PUNITIVE DAMAGES AGAINST SIERRA MENTAL WELLNESS GROUP.

To state a claim against Sierra, plaintiff has to "plausibly" allege that the actions of an "officer, director or managing agent" of Sierra met the requisite elements of proof for punitive damages, or that an "officer, director or managing agent" of Sierra

authorized or ratified" actions of an employee whose actions met the standard. *Cal. Civil Code* § 3294(b). The only defendant who is arguably alleged to be an "officer, director or managing agent" of Sierra is Mr. Simpson. He is the only employee of Sierra who is alleged to have had the duty to "assure" that the policies were in place. No other employee is alleged to have had the necessary authority to establish corporate policy. And as stated above, his own actions do not qualify as warranting an award of punitive damages.

The complaint does not allege that Mr. Simpson either authorized or ratified any of the actions taken by any other employee of Sierra. Allegations that an employee acted "with the complete authority and ratification of Sierra" are a legal conclusion, not admitted for purposes of a motion to dismiss. conclusory allegations of authorization or ratification fail to satisfy federal pleading standards. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Moss, supra,* 572 F.3d at 970; *Kelley, supra,* 750 F.Supp.2d at 1147 (conclusory allegations of elements of punitive damages claims are insufficient under federal pleading standard).

Because plaintiff has not met the requirements of California Civil Code section 3294(b) for pleading punitive damages against Sierra, the punitive damages claim against Sierra must be dismissed.

## VII. CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court grant this Motion to Dismiss in its entirety.

Dated: November 14, 2024

VEATCH CARLSON, LLP

SERENA L. NERVEZ
MARK M. RUDY
Attorneys for Defendants, **SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, and SHELLI WATSON**

17
NOTICE OF MOTION AND MOTION OF DEFS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMO. OF POINTS AND AUTHORITIES CASE NO: 2:24-cv-08187-SVX (AJRx)

# CERTIFICATE OF SERVICE

*Linda Cooper v. County of San Luis Obispo, et al.*
Case No.:  2:24-cv-08187-DDP (AJRx)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 Wilshire Boulevard, 11th Floor, Los Angeles, California 90017-2444.

On **November 14, 2024,** I served the foregoing document described as: **NOTICE OF MOTION AND MOTION OF DEFENDANTS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES**  on interested parties in this action by one or more of the following methods:

**(SEE ATTACHED SERVICE LIST)**

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed document(s) with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☐ **BY MAIL** (C.C.P. §§ 1013a, *et seq.*)**:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the offices of the addressee(s).

☒ **FEDERAL:**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America and State of California, that the foregoing is true and correct. Executed on **November 14, 2024,** at Los Angeles, California.

DIANA SANTANA_____          _____
Type or Print Name                                       Signature

# SERVICE LIST

*Linda Cooper v. County of San Luis Obispo, et al.*
Case No.: 2:24-cv-08187-DDP (AJRx)

Cameron Sehat
Jeffrey Mikel
Nathalie Smith
Andrea Monge
**THE SEHAT LAW FIRM, PLC**
5100 Campus Drive, Suite 200
Newport Beach, CA 92612
Telephone: (949) 825-5200 / Facsimile: (949) 313-5001
Email: cameron@sehatlaw.com; j.mikel@sehatlaw.com; n.smith@sehatlaw.com; andrea.m@sehatlaw.com
*Attorneys for Plaintiff, LINDA COOPER, Individually and on behalf of the Estate of Elina Quinn Branco*

Katharine L. Spaniac
Richard R. Clouse
Yolanda E. Lopezw
**CLOUSESPANIAC**
8038 Haven Avenue, Suite E
Rancho Cucamonga, CA 91730-3048
Telephone: 909-941-3388 / Facsimile: 909-941-3389
E-Mails: klspaniac@csattys.com; rrclouse@csattys.com; yelopez@csattys.com; gcrosswhite@csattys.com; pfeltnor@csattys.com; service@csattys.com
*Attorneys for Defendant, SAVANNAH WILLIAMS*

Daniel R. Friedenthal, Esq.
**FRIEDENTHAL, HEFFERNAN & BROWN, LLP**
1520 W. Colorado Boulevard, Second Floor
Pasadena, California 91105
Telephone: (626) 628-2800 / Facsimile: (626) 628-2828
E-Mail: dfriedenthal@fhblawyers.com; jbrown@fhblawyers.com; nruiz@fhblawyers.com;
*Attorneys for Defendant, BETHANY AURIOLES*

**NOTICE OF MOTION AND MOTION OF DEFS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMO. OF POINTS AND AUTHORITIES CASE NO: 2:24-cv-08187-SVX (AJRx)**

Brian L. Hoffman
Crystal L Rorabaugh
**WOOD, SMITH, HENNING & BERMAN LLP**
10960 Wilshire Boulevard, 18th Floor
Los Angeles, California 90024-3804
Phone: 310.481.7600 ♦ Fax: 310.481.7650
E-Mail: bhoffman@wshblaw.com; crorabaugh@wshblaw.com
*Attorneys for Defendant, JULIA TIDIK, NP*

\\fs01\Data\12012166\MTN-to Dismiss.docx

**NOTICE OF MOTION AND MOTION OF DEFS SIERRA MENTAL WELLNESS GROUP, JOSH SIMPSON, AND SHELLI WATSON TO DISMISS PUNITIVE DAMAGES ALLEGATIONS (F.R.C.P. 12(b)(6)); MEMO. OF POINTS AND AUTHORITIES CASE NO: 2:24-cv-08187-SVX (AJRx)**