UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA COOPER, Individually, and on Behalf of the Estate of Decedent, Elina Quinn Branco,<br><br>　　　　　Plaintiff,<br>　v.<br><br>COUNTY OF SAN LUIS OBISPO, ET AL.,<br><br>　　　　　Defendants. | No. 2:24-cv-08187-CV-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL RELEASE OF MEDICAL CHARTS UNDER THE CURRENT PROTECTIVE ORDER (DKT. 137)** |

## I.

## INTRODUCTION

　　This is a civil rights lawsuit seeking damages for the death of Elina Quinn Branco, a patient who died while under a 5150 psychiatric hold at the San Luis Obispo County Crisis Stabilization Unit (the "CSU"). (Dkt. 103 at 10-18.) Plaintiff Linda Cooper ("Plaintiff") is Ms. Branco's biological mother, successor-in-interest, and personal representative of Ms. Branco's estate. (Id. at 2.) Plaintiff brings claims on behalf of herself and Ms. Branco's estate alleging: (1) deliberate indifference to a substantial risk of harm to health in violation of the Fourteenth Amendment; (2) failure to provide safe conditions in violation of the Fourteenth

Amendment; (3) state created danger in violation of the Fourteenth Amendment; (4) supervisory liability under 42 U.S.C. § 1983; (5) neglect of a dependent adult under California Welfare & Institutions Code §§ 15610.57 & 15657; (6) negligent training, supervision, and retention under California law; (7) failure to train, as well as unconstitutional policy, custom, or practice under 42 U.S.C. § 1983; (8) parental interference in violation of the Fourteenth Amendment; and (9) wrongful death under California law.  (Id. at 1, 24-40.)  Plaintiff names as defendants:  (1) the County of San Luis Obispo; (2) the CSU; (3) Sierra Mental Wellness Group; (4) Josh Simpson; (5) Savannah Williams; (6) Jason Hooson; (7) Shelle Watson; (8) Janet Brown; (9) Bonnie Sayers; (10) Julia Tidik; (11) Bethan Aurioles; (12) Savannah Williams; and (13) Does 1 through 10 (collectively, the "Defendants").  (Id. at 5-9.)

The case is currently in the discovery phase and the current Fact Discovery Cut-Off is November 7, 2025. (Dkt. 138.)  Presently before the Court is Plaintiff's Motion to Compel Release of Medical Charts Under the Current Protective Order (the "Motion to Compel") filed on August 11, 2025.  (Dkt. 137.)  In the Motion to Compel, Plaintiff seeks the production of records reflecting the acuity levels of clients admitted to the CSU between October 2023 and May 2024.  (Id. at 2.)  On August 25, 2025, the County of San Luis Obispo (the "County") filed an Opposition to the Motion to Compel (the "Opposition").  (Id. at 140.)  On August 29, 2025, Plaintiff filed a Reply to the Opposition (the "Reply").  (Dkt. 141.)  For the reasons set forth below, the Court GRANTS IN PART Plaintiff's Motion to Compel.  (Dkt. 137.)

## II.
## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal cases and provides that parties may obtain discovery regarding any

2

nonprivileged matter that is relevant to any party's claim or defense. Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevance under Rule 26(b)(1) is defined broadly. See, e.g., Snipes v. United States, 334 F.R.D. 548, 550 (N.D. Cal. 2020); V5 Techs. v. Switch, Ltd., 334 F.R.D. 306, 309 (D. Nev. 2019) (noting that relevance for discovery purposes remains broad even after the 2015 amendments to the Federal Rules of Civil Procedure), aff'd sub nom., V5 Techs., LLC v. Switch, LTD., 2020 WL 1042515 (D. Nev. Mar. 3, 2020). In addition to relevance, Rule 26(b)(1) requires that discovery be proportional to the needs of the case. Proportionality is determined by a consideration of the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

Federal Rule of Civil Procedure 34(a) provides that a party may serve on another a request for production of documents, electronically stored information, or tangible things within the scope of Rule 26(b). Where a party fails to produce documents requested under Rule 34, the requesting party may move to compel discovery. Fed. R. Civ. P. 37(a). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." Nguyen v. Lotus by Johnny Dung Inc., 2019 WL 3064479, at *2 (C.D. Cal. June 5, 2019) (internal quotation marks omitted). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Garces v. Pickett, 2021 WL 978540, at *2 (E.D. Cal. Mar. 16, 2021). "The opposing party is required to carry a heavy burden

of showing why discovery was denied." Id. (internal quotation marks omitted). Specifically, the party opposing discovery must show that the requested discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the proposed discovery is outside the scope permitted by Rule 26(b)(1). See Fed. R. Civ. P. 26(b)(2)(C). The opposing party must specifically detail the reason why the request is improper. See Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (internal quotation marks omitted)).

## III.
## DISCUSSION

Plaintiff's Request for Production No. 103 to the County states as follows:

103. Produce all DOCUMENTS consisting of medical records for all San Luis Obispo CSU admitted and/or rejected clients from July 1, 2023 to October 1, 2024, including but not limited to, charting notes, hospital emergency records, ER discharge notes, ER diagnosis, hospital and referring facility records, history of present illness, toxicology records, 5150 probable cause declaration, admission notes, rejection notes, reason for admission, CSU admission logs, CSU charts, CSU monitoring charts, CSU monitoring logs, CSU discharge notes, discharge logs, medication approval and review records. ***All client names, social security, DOB's and addresses may be redacted to preserve confidentiality and anonymity of clients. Any objection based on 3rd party confidentiality or HIPPAA violations is trumpeted by Federal discovery rules which favors disclosure of evidence, condemns discovery gamesmanship, and favors the litigants' rights to engage in***

4

> *discovery reasonably calculated to lead to the disclosure of admissible evidence in support and/or defense of the subject claims in the present lawsuit. Specifically, considering the recent testimonies and evidence of admission of higher acuity level clients, as separately delineated in Plaintiff's proposed First Amended Complaint. Plaintiff is entitled to request and review all prior CSU client medical records to analyze, with the assistance of her experts, their activity level and fitness to be admitted to the CSU. Further all produced records, redacted for confidentiality, will fall under the current Federal Protective Order limiting its use to the subject litigation and accessible only to the parties and their expert witnesses.*

(Dkt. 137-5 at 6-7.) The County responded to this request with the following objections: (1) relevance; (2) overbroad; (3) unduly burdensome; (4) invades the rights of privacy of third parties; (5) disclosure would violate a court order; (6) the request violates Federal Rule of Civil Procedure 34(b)(1)(A) as it does not "describe with reasonable particularity each item or category of items" to be produced; (7) the request seeks documents protected from disclosure under the California Confidentiality of Medical Information Act; (8) the requests seeks information protected from disclosure by California Civil Code Section 56, *et seq.*; (9) the request seeks information protected from disclosure by the Landerman-Petris-Short Act; (10) the request seeks information protected under the Health Insurance Portability and Accountability Act of 1996 or a patient's right of privacy under 45 C.F.R. § 164.512; (11) the request seeks information protected under 42 C.F.R. § 2.13(a); (12) in seeking drug and alcohol services records, the request further violates federal confidentiality laws and regulations under 42 C.F.R. Part 2; and (13) the request violates the right to privacy under the California Constitution. (Dkt. 140-1 at 25-27.)

For purposes of the Motion to Compel, Plaintiff has narrowed her request to "records reflecting the acuity levels of clients admitted to and rejected by the CSU

between October 2023 and May 2024." (Dkt. 141 at 2.) For the reasons set forth below, the Court concludes that Plaintiff has met her initial burden of demonstrating relevance for records of patients admitted to the CSU who were detoxifying from drugs or alcohol. The Court further concludes that the County has not met its burden of demonstrating that the medical records should not be produced pursuant to a confidentiality designation and with appropriate redactions. Finally, the Court concludes that proportionality principles require the categories of documents requested by Plaintiff to be narrowed and clarified. Thus, the Court GRANTS IN PART Plaintiff's Motion to Compel by directing the County to produce specific categories of medical records within fourteen days.

A. **Plaintiff Has Met Her Initial Burden Of Demonstrating Relevance For Records Of Patients Admitted To The CSU Who Were Detoxifying From Drugs Or Alcohol.**

Plaintiff contends that Defendants were deliberately indifferent to Ms. Branco's serious medical conditions when they admitted her to the CSU for monitoring and nevertheless failed to carry out even the most basic monitoring. (Dkt. 103 at 3.) Plaintiff points to deposition testimony from certain defendants as well as third-party witnesses who have testified that both Sierra Mental Wellness Group and the County sought to "increase the census" by admitting more clients to the CSU, and by implication taking on detoxifying clients including drug and alcohol to meet their higher census requirement. (Dkt. 137 at 4.) Plaintiff contends that medical records relating to the medical and psychological needs of clients admitted to and rejected by the CSU from October of 2023 to May of 2024 are relevant to show that Defendants admitted clients beyond the care level that the CSU was equipped to provide. (Id. at 6.)

Specifically, Plaintiff alleges several unconstitutional practices by the County pursuant to Monell v. N.Y. City Dep't of Soc. Serv., 436 U.S. 658, 691 (1978), that it knowingly accepted higher acuity patients including detoxing patients above the

6

safe management of the CSU in an overall theme of retaining their contract with Sierra Mental Wellness Group, the contractor in charge of operating the CSU. (Dkt. 103 at 36-38.) Plaintiff alleges that the County and Sierra Mental Wellness Group knew that the CSU routinely lacked registered nurses to clinically evaluate clients with underlying medical conditions, knew that the CSU was minimally supervised and managed, and that the night shift staff routinely failed to comply with required monitoring and welfare checks, knew that the individual defendants had not been trained adequately in monitoring, documenting and assessing medically unstable patients within the confines of a short-term crisis facility, and that this failure to train led to the reckless treatment and care of Ms. Branco, ultimately resulting in her death. (Id. at 37.) Plaintiff further alleges that the County and Sierra Mental Wellness Group had a custom, practice, and policy of relying on non-medically trained staff to routinely medically assess clients with co-morbid medical conditions which was a violation of California nursing and medical standards, medical state laws, and the illegal practice of nursing without the proper credentials, training, and experience, all at the expense to clients' health and safety. (Id.)

In Monell, the Supreme Court explained "that a municipal entity cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691. Instead, a municipality may be held liable under Section 1983 only if the alleged wrongdoing was committed pursuant to a municipal policy, custom, or practice. See id. at 694; see also Horton by Horton v. City of Santa Monica, 915 F.3d 592, 603-04 (9th Cir. 2019) ("[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to . . . a pervasive practice or custom."). "A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992). Once a plaintiff establishes the existence of a municipal

policy, custom, or practice, the plaintiff must still "show a direct causal link between [the] policy or custom and the alleged constitutional deprivation." Bell v. Williams, 108 F.4th 809, 824 (9th Cir. 2024) (internal quotation marks omitted). "One way of doing so is by showing that the municipality demonstrated deliberate indifference to constitutional rights when it trained its employees. This requires proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (internal quotation marks omitted). "And a failure-to-train theory of Monell liability usually requires a pattern of similar constitutional violations by untrained employees." Vanegas v. City of Pasadena, 46 F.4th 1159, 1167 (9th Cir. 2022) (internal quotation marks omitted).

As explained above, evidence of a pattern of similar constitutional violations is relevant to show the existence of a municipal policy, custom, or practice, as well as a municipality's failure to train its employees. See Gillette, 979 F.2d at 1349; Vanegas, 46 F.4th at 1167. Moreover, evidence of a known or obvious risk of harm is relevant to show a municipality's deliberate indifference. See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016) ("Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of Monell are satisfied." (internal quotation marks omitted)). Therefore, the Court concludes that evidence showing that the CSU admitted patients with acuity beyond the level of care that the CSU was equipped to provide would be relevant because it would show actual or constructive notice of a substantial risk of harm. Plaintiff specifically contends that the patients with acuity beyond the level of care that the CSU was equipped to provide were those patients detoxifying from drugs or alcohol. (Dkt. 103 at 20 ("The CSU was never intended to perform as a detox or residential treatment center nor capable medically to safely manage clients who either had recently overdosed or were in active drug or alcohol withdrawals.").) Therefore, the

Court concludes that relevance is limited to those patients detoxifying from drugs or alcohol.[1]  By contrast, it is unclear to the Court why evidence of the acuity of patients rejected by the CSU would be relevant.[2]

      In sum, the Court concludes that records reflecting the acuity levels of patients admitted to the CSU between October 2023 and May 2024 who were detoxifying from drugs or alcohol would be relevant to establish Plaintiff's <u>Monell</u> claims.  <u>See</u> <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002) ("As we have explained, broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." (internal quotation marks and brackets omitted)).  Because Plaintiff has met her initial burden of establishing relevance, the Court must next determine whether the County has met its "heavy burden" of showing why the discovery sought should be denied.  <u>See</u> <u>Garces</u>, 2021 WL 978540, at *2 (internal quotation marks omitted).

---

[1] Plaintiff appears to clarify in her Reply that the medical records she is seeking are "limited to clients detoxifying from alcohol and drugs."  (Dkt. 141 at 6.)

[2] In the Notice, Plaintiff only references "records reflecting the acuity levels of clients admitted to Defendant's facility between October 2023 and May 2024." (Dkt. 137 at 2.)  Plaintiff later asserts that "records relating to the medical and psychological needs of clients admitted to and rejected by the CSU over time are critical evidence relevant to the issues of the case."  (<u>Id.</u> at 4.)  But Plaintiff never explains why records related to clients rejected by the CSU would be relevant.  To the contrary, Plaintiff argues that the records sought by the Motion to Compel "are directly relevant to Plaintiff's claims that Defendant admitted clients beyond the care level the facility was equipped to provide."  (<u>Id.</u> at 6; <u>see id.</u> ("Records reflecting the acuity levels of admitted clients between September 2023 and May 2024 are the most direct evidence of whether Defendant placed clients above the care level it was fit to provide.").)  The Court believes that only records of admitted clients are relevant to show that the CSU admitted patients beyond the level of care the facility was equipped to provide.

**B.     The County Has Not Met Its Burden Of Demonstrating That The Medical Records Should Not Be Produced Pursuant To A Confidentiality Designation And With Appropriate Redactions.**

The County's "primary concern" is that Plaintiff's request for medical records "invades the privacy rights of third parties." (Dkt. 140 at 4.) Because the Court concludes that the requested medical records are relevant to Plaintiff's federal civil rights claims under Monell, the Court applies federal law in assessing the privacy rights of the third-party patients at issue. See Fed. R. Evid. 501; Agster v. Maricopa Cnty., 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."). The County agrees that federal law applies here and relies on the five-factor test for constitutional privacy of medical information articulated in Seaton v. Mayberg, 610 F.3d 530, 539 (9th Cir. 2010). (Dkt. 140 at 4.) The Court finds this test to be a useful way of balancing Plaintiff's interest in obtaining the medical records against the third-party patients' privacy interest and therefore will also utilize the test here.

As articulated by the Ninth Circuit, "[t]he test is to balance the following factors to determine whether the [requesting party's] interest in obtaining information outweighs the individual's privacy interest: (1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." Seaton, 610 F.3d a 539 (internal quotation marks omitted). With regard to the first factor, the parties and the Court agree that the information requested contains highly sensitive information since Plaintiff is specifically seeking medical records. (Dkt. 140 at 4; Dkt. 141 at 4.) But the Court also agrees with Plaintiff that the sensitivity of the information sought has to be considered in light of the adequacy of safeguards to prevent unauthorized disclosure, which is the third factor. (Dkt. 141 at 4.)

With regard to the second factor, the County appears to suggest there is potential for harm from a non-consensual disclosure because this lawsuit has received media coverage. (Dkt. 140 at 5.) But the County fails to explain how the existence of media coverage for this lawsuit creates a potential for harm from the County producing medical records to Plaintiff, especially because the County can designate those records as confidential pursuant to the Stipulated Protective Order in this case.³ (Dkt. 74.) Indeed, in Seaton, the Ninth Circuit found "[n]o serious potential for harm from the disclosure" because "[d]isclosure [wa]s limited to the parties and the court, and the [medical records] remain[ed] confidential for all other purposes." Seaton, 610 F.3d a 539.

With regard to the third factor, the County acknowledges that the existence of the Stipulated Protective Order means that "[t]his factor does weigh in favor of disclosure." (Dkt. 140 at 5.) Indeed, courts routinely find that protective orders are adequate safeguards to prevent unauthorized disclosure when medical records are produced. See, e.g., Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc., 2024 WL 4488711, at *15 (C.D. Cal. Sept. 30, 2024) ("[T]o the extent the Court has ruled that Bedford must produce items as to which it has asserted privacy/third party privacy/HIPAA objections, it has determined that whether considered under state or federal privacy law, Plaintiffs' need for the information sought outweighs the privacy right of Bedford/third parties and that privacy concerns can adequately be protected by the Stipulated Protective Order entered in this action."). The Stipulated Protective Order in this case is also sufficient to address any concern related to the Health Insurance Portability and Accountability Act ("HIPAA"), 42 C.F.R. §

---

³ To the extent the County suggests that the CSU might suffer reputational harm, (Dkt. 140 at 5), the Court rejects this suggestion since the CSU closed in October of 2024. (Dkt. 140-2 at 3.)

2.13(a), or 42 C.F.R. Part 2.⁴  See, e.g., A.H. v. Cnty. of Los Angeles, 2023 WL 3035349, at *4 (C.D. Cal. Jan. 19, 2023) ("Given the protective order in place, Court is likewise unpersuaded by Plaintiffs' assertion that HIPAA bars disclosure of these records."); Gonzalez v. Marks, 2009 WL 179779, at *3 (E.D. Cal. Jan. 26, 2009) ("Under HIPAA, disclosure is permitted, *inter alia*, pursuant to a court order, subpoena, or discovery request when the healthcare provider receives satisfactory assurance from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order." (internal quotation marks and ellipses omitted)); see also 42 U.S.C. §§ 290dd-2(b)(2)(C) (permitting disclosure of substance abuse and mental health records pursuant to court order that imposes "appropriate safeguards against unauthorized disclosure").  Moreover, the County can further protect the privacy interests of the third-party patients by redacting any personally identifiable information ("PII") from the records before production.⁵  See, e.g., Briggs v. Adel, 2020 WL 4003123, at *16 (D. Ariz. July 15, 2020) ("Courts in the Ninth Circuit have generally held that a medical patient's right to privacy may be protected while still allowing the disclosure of private medical records if the records are properly redacted.").

With regard to the fourth factor, the County appears to contend that Plaintiff's need for the medical records is low because "Plaintiff is not litigating the rights of any person apart from [Ms.] Branco" and "Plaintiff has no standing to recover damages for injuries to other clients of the CSU." (Dkt. 140 at 5.)  However, the Court has already concluded that records reflecting the acuity levels of patients

---

⁴ If the County believes that the Stipulated Protective Order requires additional language, it can meet and confer with the parties and file a stipulated amendment.  If the parties cannot agree on such amendment, if needed, then the County can reach out to the Court and request an informal discovery conference.

⁵ The parties should meet and confer to reach agreement on what constitutes PII.  If the parties cannot agree, they should reach out to the Court and request an informal discovery conference.

admitted to the CSU between October 2023 and May 2024 who were detoxifying from drugs or alcohol would be relevant to establish Plaintiff's Monell claims. Indeed, the County appears to acknowledge that records relating to patients detoxifying from drugs and alcohol would be relevant to Plaintiff's claims. (Id. at 6 ("This statement shows Plaintiff focusing on records relating to drug and alcohol detoxification, not heightened acuity.").) Thus, the County argues that "[i]f Plaintiff needs records, they should be limited to client records showing drug results, not to the entire client files." (Id.) As set forth above, the Court has already narrowed the scope of relevant records to those patients who were admitted to the CSU and who were also detoxifying from drugs or alcohol. The Court will consider further narrowing the scope of records actually produced in the context of assessing proportionality below.

Finally, with regard to the fifth factor, the County correctly notes that "[w]hile HIPAA does not encourage disclosure of medical information, it does afford litigants a way to allow the information to be produced without violating the regulation." (Id.) Thus, the Court agrees with the County that "[t]his factor is neutral." (Id.) In sum, the Court concludes that the balance of factors weighs in favor of disclosure so long as the records are produced under a confidentiality designation under the terms of the Stipulated Protective Order and the County redacts any PII. Because the County has not met its burden of demonstrating that the discovery sought should be denied, the Court will now consider proportionality before ordering the County to produce medical records. See Fed. R. Civ. P. 26(b)(2)(C).

C. **Proportionality Principles Require The Categories Of Documents Requested By Plaintiff To Be Narrowed And Clarified.**

As set forth above, Rule 26(b)(1) requires that discovery be both relevant and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

13

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The County contends that Plaintiff's request for all medical records reflecting the acuity levels of clients is overbroad because "Plaintiff's motion provides no description of acuity or what specific records should be produced." (Dkt. 140 at 7.) Thus, the County contends that it would need to conduct a detailed review of medical records to determine which documents to produce and that "[t]his problem leads to the undue burden on the County." (Id.)

However, Plaintiff appears to have narrowed her request "to a discrete category of documents—acuity scoring forms, tox results, withdrawal assessment, substance use diagnoses, diagnosis of substance abuse or other records tracking patient care levels at admission." (Dkt. 137 at 8.) The Court concludes that these specifically identified categories are sufficiently clear (with some additional guidance from the Court) so that the County can quickly identify which documents to produce and redact them for PII. With regard to acuity scoring forms, the Court recognizes that the County appears to state that such a form may not be present in every patient's medical record. (Dkt. 140-2 at 3.) However, the County is only obligated to produce such a form if it is present in the medical record. With regard to toxicology results, the County should produce any medical record that contains the results of a toxicology test. Indeed, the County admits that such records "would be helpful." (Dkt. 140-2 at 4.) Of course, the County only has to produce such records if they exist. (Id. ("If the client were a walk-in, there would not necessarily be a toxicology report.").) With regard to withdrawal assessments, these records would also be highly relevant and should be produced, if they exist. With regard to "substance use diagnoses" and "diagnosis of substance abuse," these appear to be the same thing. (Dkt. 137 at 8.) Therefore, the County should produce any medical record that contains a diagnosis of substance abuse, if such a record exists. Finally,

with regard to "other records tracking patient care levels at admission," (id.), the Court will narrow this category to simply require the County to produce the admission paperwork for each responsive patient. Indeed, the County acknowledges that "[w]hen clients are admitted to the CSU, there is admission paperwork that is prepared." (Dkt. 140-2 at 3.)

In sum, the Court concludes that the County must produce the following specific records for each responsive patient: (1) any acuity scoring form; (2) any medical record that contains the results of a toxicology test; (3) any withdrawal assessment; (4) any medical record that contains a diagnosis of substance abuse; and (5) any paperwork for admission to the CSU. If the County is uncertain whether a specific document qualifies as falling within one of these categories, the County can submit the record to the Court for *in camera* review. The Court concludes that these specific categories of documents are proportional to the needs of the case, as well as sufficiently narrow and clear to overcome the County's overbreadth and burden objections.

## IV.
## CONCLUSION

Consistent with the foregoing, Plaintiff's Motion to Compel is GRANTED IN PART. (Dkt. 137.) Specifically, the Court rules as follows:

The County must produce certain categories of medical records for patients admitted to the CSU between October 2023 and May 2024 who were detoxifying from drugs or alcohol: (1) any acuity scoring form; (2) any medical record that contains the results of a toxicology test; (3) any withdrawal assessment; (4) any medical record that contains a diagnosis of substance abuse; and (5) any paperwork for admission to the CSU. These records should be redacted to remove all PII and should be designated as confidential pursuant to the terms of the Stipulated Protective Order. (Dkt. 74.) These records must be produced by **October 20,**

**2025**.[6]

Finally, the Court notes that neither side sought an award of expenses with regard to this discovery dispute. (Dkts. 137, 140, 141.) Under Federal Rule of Civil Procedure 37(a)(5)(C), where a motion to compel is granted in part, the court has discretion to apportion reasonable expenses for the motion. The Court exercises its discretion to decline to award expenses for this motion. The Court's conclusion is based on the fact that the categories of documents sought by Plaintiff were not entirely clear and required both narrowing and clarification by the Court. Moreover, Plaintiff's document request implicates the privacy rights of third-party patients and therefore, the County's objections to the document request as initially drafted were substantially justified.

IT IS SO ORDERED.

DATED: October 6, 2025

                                    _____
                                    HON. A. JOEL RICHLIN
                                    UNITED STATES MAGISTRATE JUDGE

---

[6] The Court anticipates that the universe of responsive records is going to be fairly limited, but the number of patients admitted to the CSU between October 2023 and May 2024 who were detoxifying from drugs or alcohol is not clear from the information contained in the briefing. Therefore, if the County believes that the universe of responsive records is too large to complete production by this deadline, the Court requests that the County provide a declaration identifying the volume of responsive documents and the efforts being undertaken to timely complete production no later than **October 10, 2025**. The Court will review the declaration and may schedule a brief informal discovery conference to consider the issue.